UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------x

SHAUN HOKE,

                Petitioner,           **MEMORANDUM AND ORDER**

      -against-

                                    15-CV-4828 (KAM)

DALE ARTUS, Superintendent, Attica
Correctional Facility,

                Respondent.

-----------------------------------x

Kiyo A. Matsumoto, United States District Judge:

        *Pro se* petitioner Shaun Hoke ("Petitioner") brings the above-captioned petition pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights.  (Amended Petition for a Writ of Habeas Corpus ("Amended Pet."), ECF No. 13.)  Petitioner's claims arise from a judgment of conviction following a jury trial in the Supreme Court of New York State, Kings County, on charges of Assault in the First Degree, Assault in the Second Degree, three counts of Robbery in the First Degree, and two counts of Criminal Possession of a Weapon in the Second Degree. Petitioner was sentenced as a second violent felony offender to concurrent terms of incarceration totaling twenty-five years, to be followed by five years of post-release supervision.  (ECF No.

15, Respondent's Affidavit in Opposition to Amended Petition for a Writ of Habeas Corpus ("Resp. Aff.") at 3.)[1]

For the reasons stated below, the petition is denied.

**BACKGROUND**

**A. Facts**

In in the early evening on January 25, 2009 Petitioner arrived at the apartment of Wardell Jackson at 162 Hart Street in Brooklyn, NY. (*Id*. at 2.) Jackson was watching a movie with Ernestine Behlin when Petitioner arrived. (*Id*. at 2.) Jackson and Behlin both knew Petitioner, who they allowed to enter the apartment. (*Id*.) After entering the apartment, Petitioner displayed a gun and took two cell phones belonging to Jackson, two cellphones belonging to Behlin, and a DVD player belonging to Jackson. (*Id*.) Petitioner fired a gun at Jackson, inflicting a wound to Jackson's left leg that caused massive bleeding. (*Id*.) Petitioner then fled and Jackson was taken to the hospital, where he had to undergo multiple surgeries as a result of the gunshot wound. (*Id*.) Jackson's wounded left leg was subsequently amputated at the hip. (*Id.*) On February 4, 2009, detectives arrested petitioner, who provided a false name, in the vicinity of the street where the shooting took place. (ECF No. 4-1, Respondent's Affidavit in Opposition to Petition

---

[1] Page numbers cited herein refer to the page numbers assigned by the Electronic Filing System ("ECF") unless otherwise specified.

for A Writ of Habeas Corpus, Exhibit A, Appellant's Brief
("Respondent's Exhibit A"), at 21.)

### B. Jury Verdict and Sentence

Petitioner was charged with two counts of Assault in
the First Degree (N.Y. Penal Law § 120.15[1]), Assault in the
Second Degree (N.Y. Penal Law § 120.05[1], [2]), Assault in the
Third Degree (N.Y. Penal Law § 120.00[1]), two counts of Robbery
in the First Degree (N.Y. Penal Law § 160.15[1], [2]), Robbery
in the Second Degree (N.Y. Penal Law 160.10[2][a]), two counts
of Robbery in the Third Degree (N.Y. Penal Law § 160.05), two
counts of Petit Larceny (N.Y. Penal Law § 155.25), Criminal
Possession of a Weapon in the Second Degree (N.Y. Penal Law §
265.03[1][b], [3], Criminal Possession of a Weapon in the Third
Degree (N.Y. Penal Law § 265.02[1]), and Criminal Possession of
a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01[1]).
(Resp. Aff. at 2.) Petitioner was acquitted of all four counts
in which Behlin was the complainant but was convicted of the
remaining counts submitted which included Assault in the First
Degree, Assault in the Second Degree, three counts of Robbery in
the First Degree, and two counts Criminal Possession of a Weapon
in the Second Degree. (*Id.* at 2-3.)

On May 20, 2011 Petitioner was sentenced, as a second
violent felony offender, to concurrent prison terms of twenty-
five years on the three first-degree robbery convictions,

twenty-five years on the first-degree assault conviction, seven years on the second-degree assault conviction, seven years on the second-degree criminal of possession of a weapon conviction and was given five years of post-release supervision. (Resp. Aff. at 3 (citing Sentencing Transcript dated May 20, 2011, at 4, 16-17.))

**PROCEDURAL HISTORY**

On April 11, 2013, Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Judicial Department ("Appellate Division"). Petitioner raised the following claims: (1) the trial court denied defendant's right to an impartial jury; (2) the People failed to prove Petitioner's guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence; (3) Petitioner was deprived of his rights to confront a witness, to present a defense and to due process; (4) Petitioner was denied his right to a fair trial by the prosecutor's inflammatory summation; and (5) trial counsel was ineffective for failing to object to some of the prosecutor's inflammatory remarks. (*See generally* Respondent's Exhibit A.) On November 27, 2013, the Appellate Division unanimously affirmed Petitioner's judgment of conviction. *People v. Hoke*, 111 A.D.3d 959 (2d Dep't 2013).

Petitioner sought leave to appeal to the New York Court of Appeals from the order of the Appellate Division

affirming Petitioner's judgment of conviction. On May 8, 2014, Petitioner's application for leave to appeal to the New York Court of Appeals was denied. *People v. Hoke*, 23 N.Y.3d 963 (2014).

On August 6, 2015, Petitioner filed a petition in this Court seeking a Writ of Habeas Corpus. (*See* ECF No. 1, Petition for Writ of Habeas Corpus.) Petitioner claimed that: (1) he received ineffective assistance of counsel at trial; and (2) the prosecutor's summation deprived Petitioner of a fair trial. By an answer dated October 20, 2015, respondent opposed the petition. Petitioner then filed a motion for leave to amend his petition to add additional claims. (*See* ECF No. 13, Motion for Leave to Amend.) This Court granted Petitioner's motion to amend, filed on April 18, 2016, by an order dated June 22, 2016.

In the instant amended petition dated April 12, 2016, Petitioner raises the following claims: (1) the trial court denied Petitioner's right to an impartial jury when it granted the prosecutor's challenge for cause of a prospective juror; (2) the People failed to prove Petitioner's guilt beyond a reasonable doubt; (3) Petitioner was deprived of his right to confront a witness, to present a defense, and due process when the trial court granted the People's motion *in limine* precluding defense counsel from cross-examining a police witness about his prior testimony; (4) Petitioner was denied a fair trial by the

prosecutor's inflammatory summation; and (5) trial counsel was ineffective. (Amended Pet. at 2-3.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that

6

reached by the Supreme Court on "materially indistinguishable"
facts; or (3) identifies the correct governing legal rule but
unreasonably applies it to the facts of the petitioner's case.
*Id.* at 412-13.  Factual determinations made by the state court
are presumed to be correct, and the petitioner bears the burden
of rebutting the presumption of correctness by clear and
convincing evidence.  28 U.S.C. § 2254(e)(1).

## DISCUSSION

### A. Exclusion of a Prospective Juror

Petitioner claims in ground one of his amended
petition that the state trial court denied him the right to an
impartial jury under the Due Process Clause of the United States
Constitution and also that the trial court violated New York
C.P.L. § 270.20(2) when the court granted the prosecution's
challenge for cause of a prospective juror.  (Amended Pet. at
2).  Petitioner alleges that the trial court violated New York
C.P.L. § 270.20(2), which provides:

> All issues of fact or law arising on the challenge
> must be tried and determined by the court. If the
> challenge is allowed, the court must exclude the
> person challenged from service. An erroneous ruling by
> the court allowing a challenge for cause by the people
> does not constitute reversible error unless the people
> have exhausted their peremptory challenges at the time
> or exhaust them before the selection of the jury is
> complete.  An erroneous ruling by the court denying a
> challenge for cause by the defendant does not
> constitute reversible error unless the defendant has
> exhausted his peremptory challenges at the time or, if
> he has not, he peremptorily challenges such

> prospective juror and his peremptory challenges are
> exhausted before the selection of the jury is
> complete.

N.Y. C.P.L. § 270.20(2).

Petitioner asserts that because the prosecutor had exercised all of the People's allotted fifteen peremptory challenges, the trial court committed reversible error by allowing the prosecution's challenge for cause. (Amended Pet. at 8-9.) The Appellate Division rejected Petitioner's claim and held that the trial court "providently exercised its discretion in granting the People's challenge for cause to a prospective juror who divulged during *voir dire* that her son had recently been arrested and was being prosecuted by the Kings County District Attorney's office." *People v. Hoke*, 111 AD.3d 959, 959 (2d Dep't 2013).

To the extent that Petitioner's claim rests on a question of state law (N.Y. C.P.L. § 270.20(2)), habeas relief is unavailable. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S.

62, 67-68 (1991). Petitioner's claim that the state court denied him the constitutional right to an impartial jury does however present a question of federal law that is subject to habeas review.

Under AEDPA, habeas relief is authorized only if the state court's decision "was contrary to, or involved, an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or if the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). In order to establish that a state court decision relied on an unreasonable application of Supreme Court precedent, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

A challenge for cause to a prospective juror, under New York law, may be made on the basis that the prospective juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based on the evidence adduced at trial. N.Y. C.P.L § 270.20(1)(b).

In the instant case, the juror in question, Ester Macrae, when asked by defense counsel whether she could "detach' herself from her son's case while serving on Petitioner's jury, replied, "I could try. As I said, as you guys have put [it] numerous times, it's hard to do, but as the same time I can try." (ECF No. 5-2, Jury Selection Transcript ("Jury Tr.") at 283-284.) The prosecution challenged Ms. McCrae for cause, arguing that her response was equivocal, and the trial court determined that the response was to be excluded. (Jury Tr. at 286.) The Appellate Division concluded that, "[t]he prospective juror's responses to questioning during voir dire, construed as a whole, failed to demonstrate an absolute belief that her son's arrest and prosecution would not have an influence on her verdict." *Hoke*, 111 A.D.3d at 960 (2d Dep't 2013).

In *White v. Wheeler*, 136 S. Ct. 456, 462 (2015), the U.S. Supreme Court confirmed that a state court's decision to exclude a juror for cause warrants AEDPA deference. The record in *Wheeler* involved a prospective juror in a capital case that was excluded for cause because the juror was not "absolutely certain" that he could realistically consider the death penalty. *Id*. at 459. The U.S. Supreme Court determined that there was a reasonable basis for the state court to conclude that the juror would not give fair consideration to the death penalty. *Id*. at 461. The Supreme Court further found, that on review of the

state court decision, the Court of Appeals erred by failing to ask the question, "Was the Kentucky Supreme Court's decision to affirm the excusal of Juror 638 for cause 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'." *Id*. (citing *White v. Woodall*, 572 U.S. 415, 420 (2014)). In the instant petition, Petitioner has cited no Supreme Court precedent that indicates that the Appellate Division's rejection of his claim that the trial court violated his constitutional right to an impartial jury was a determination that involved an unreasonable application of clearly established federal law based on Supreme Court precedent at the time of the Appellate Division's decision.

In the instant petition, as in *Wheeler*, the prospective juror, Ester McCrae, gave equivocal responses as to whether she could be an impartial juror. Petitioner points to no precedent that would show that the decisions of the New York State courts were "contrary to, or involved, an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, the Appellate Division's decision to affirm the trial court's excusal of this prospective juror was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fair-minded disagreement." *See Richter* 562 U.S. at 103.

Petitioner's due process claim is therefore denied.

**B. Sufficiency of the Evidence**

Petitioner claims that the evidence at trial was legally insufficient to support his conviction. Petitioner points to his acquittal of all charges related to Ernestine Behlin, the female complainant in the underlying case, as well as to the extensive criminal record for the male Wardell Jackson, the male complainant, whose testimony supported Petitioner's conviction. (Amended Pet. at 3.)

The Appellate Division rejected Petitioner's claim as unpreserved for review. In rejecting Petitioner's claim, the Appellate Division relied on New York Criminal Procedure Law ("N.Y.C.P.L.") 470.05[2] in support of its finding that "[t]he defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review." *Hoke*, 111 A.D.3d at 960. Petitioner's claim is therefore procedurally barred from federal habeas review because the Appellate Division's decision rested on an independent and adequate state ground. In *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991), the Supreme Court explained that "[t]he doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state

12

procedural requirement.  In these cases, the state judgment
rests on independent and adequate state procedural grounds."
*Id*.  The Supreme Court has also held that "an adequate and
independent finding of procedural default will bar federal
habeas review of the federal claim, unless the habeas petitioner
can show 'cause' for the default and 'prejudice attributable
thereto' or demonstrate that failure to consider the federal
claim will result in a 'fundamental miscarriage of justice.'"
*Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted).
Here, Petitioner has not made a sufficient showing of cause,
prejudice or actual innocence to excuse his procedural default
nor has Petitioner demonstrated that failure to consider his
federal claim will result in a "fundamental miscarriage of
justice."  *Id.*

Petitioner's sufficiency of the evidence claim is
therefore denied.

### C. Confrontation of a Witness

Petitioner claims that he was deprived of his right to
confront a witness, to present a defense and to due process when
the court granted the People's motion *in limine* which precluded
defense counsel from cross-examining a police witness about his
prior testimony.  Petitioner claims that in the witness's prior
testimony, the witness told Petitioner the name of the
individual who was going to view his line-up.  (Amended Pet. at

3,17.)  The Appellate Division rejected Petitioner's claim as unpreserved for review.

In rejecting Petitioner's claim the Appellate Division stated, "[t]he defendant's remaining contention is unpreserved for appellate review."  *Hoke*, 111 A.D.3d at 960.  Therefore, Petitioner's claim is now procedurally barred from federal habeas review because the Appellate Division's decision rested on an independent and adequate state ground.  *See Coleman*, 501 U.S. at 729-730.

Again applying *Harris,* 489 U.S. at 262 (citations omitted), Petitioner here has not made a sufficient showing of cause for his default, prejudice or actual innocence to excuse his procedural default; nor has Petitioner demonstrated that failure to consider his federal claim will result in a "fundamental miscarriage of justice."  *Id.*

Petitioner's confrontation of a witness and right to present a defense claims are therefore denied.

### D. Improper Summation

Petitioner claims that he was deprived of his constitutional right to a fair trial by the prosecutor's "inflammatory summation."  (Amended Pet. at 20.)  Petitioner claims that the prosecutor suggested, falsely, that Petitioner intimidated a witness, and that Behlin had identified him as the perpetrator of the crime.  Petitioner also claims that the

prosecutor "grossly misrepresented" testimony by Behlin about the presence of a third person.  (*Id.*)

The Appellate Division rejected Petitioner's claim of an improper summation as unpreserved for appellate review.  The Appellate Division explained:

> The defendant's contention that certain comments made by the prosecutor during summation were improper and deprived him of a fair trial is unpreserved for appellate review (*see* CPL 470.05[2] ), because he raised no objection to certain challenged comments, made general objections to other challenged comments without alerting the trial court to his specific claims now raised on appeal and, when his objections to the remaining challenged comments were sustained, he failed to seek any further curative relief or move for a mistrial.

*Hoke*, 111 A.D.3d at 960.  Therefore, Petitioner's claim is now procedurally barred from federal habeas review because the Appellate Division's decision rejecting Petitioner's claim rested on an independent and adequate state ground.  *See* *Coleman*, 501 U.S. at 729-730.

As before, Petitioner has not made a sufficient showing under *Harris* of cause, prejudice or actual innocence to excuse his procedural default nor has Petitioner demonstrated that failure to consider his federal claim will result in a "fundamental miscarriage of justice."  *Harris*, 489 U.S. at 262 (citations omitted).

Petitioner's improper summation claim is therefore denied.

**E. Ineffective Assistance of Counsel**

Petitioner claims that trial counsel provided ineffective assistance when he failed to object when the prosecutor repeatedly made improper references that were not supported by the evidence in the record.  (Amended Pet. at 24.) Petitioner also claims that trial counsel was ineffective when he failed to object when the prosecutor repeatedly inferred that Behlin pointed petitioner out as the shooter in her grand jury testimony.  (ECF No. 5-3, Trial Transcript ("Tr. 1") at 289-302.)  The court permitted the prosecutor to ask the witness (outside the presence of the jury) about her earlier grand jury testimony and Behlin clarified that she did not mean to say that she saw Petitioner shoot Mr. Jackson.  (*Id*. at 299-300.) Petitioner claims that trial counsel, without objection, allowed the prosecutor to imply repeatedly that Behlin identified Petitioner as the shooter even though Behlin had changed her testimony at trial from her earlier grand jury testimony. (Amended Pet. at 24; *see also* Tr. 1 at 300-302.)  Petitioner states that the prosecutor repeatedly implied the reason that Behlin might have changed her story was because she feared for her life.  (Amended Pet. at 24.)  Petitioner complains that the trial counsel was ineffective because he allowed the foregoing prosecutor's conduct to go uncontested.  (*Id*. at 24.)

The Appellate Division rejected Petitioner's contention that trial counsel was ineffective without specifically addressing the ineffectiveness issue. *Hoke*, 111 A.D.3d at 960. Instead, the Appellate Division expressly rejected the underlying premise of Petitioner's claim, which was that the prosecutor's summation remarks deprived Petitioner of a fair trial. *Id*. This Court is "not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation." *Bell v. Cone*, 543 U.S. 447, 455 (2005). Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing that there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. *See also Johnson v. Williams*, 133 S. Ct. 1088, 1091-1092 (2013) (where state court addressed some claims raised by defendant but not a claim later raised in federal habeas proceedings, the federal claim is presumed to have been adjudicated on the merits in state court). Although the Appellate Division's decision did not expressly address Petitioner's claim of ineffective assistance of trial counsel on appeal, the Appellate Division adjudicated the underlying basis of the claim on the merits because the Petitioner raised the underlying basis of the claim on direct appeal in accordance with New York law. *See Hoke*, 111 A.D.3d at 960. The Appellate

Division also did not expressly reject the ineffective
assistance of counsel claim on any procedural grounds. *Id.*

A claim of ineffective assistance of counsel is
evaluated under the two-pronged test set out in *Strickland v.
Washington*, 66 U.S. 668 (1984). In order to prove ineffective
assistance of counsel, a defendant must show first that
counsel's performance "fell below an objective standard of
reasonableness" and second that "there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." *Id.* at
688, 694. A reasonable probability is a probability sufficient
to undermine confidence in the outcome. *Id.* at 694. Where the
state court has found that the petitioner received effective
assistance of counsel, the Court reviews that decision under the
deferential standard of AEDPA. 28 U.S.C. § 2254(d).

Applying AEDPA's deferential standard, this court does
not find that the state court's rejection of the ineffective
assistance claim was contrary to or an unreasonable application
of federal law. There is a "strong presumption" that counsel's
strategy and tactics fall "within the wide range of reasonable
professional assistance." *Strickland*, 466 U.S. at 689; *see also
Weeks v. Senkowski*, 275 F.Supp.2d 331, 338-39 (E.D.N.Y. 2003),
*aff'd*, 96 Fed. Appx. 787 (2d Cir. 2004). Here, the court finds
that defense counsel, Morris Shamuil, Esq., provided Petitioner

with meaningful and effective representation at trial.  Defense
counsel, made an opening statement in which he declared
Petitioner's innocence and he also aggressively cross-examined
the prosecution's witnesses.  (ECF No. 5-3, Tr. 1 at 38-39.)
Defense counsel made numerous objections and moved for dismissal
of the charges related to Behlin.  (ECF No. 6-1, Trial
Transcript ("Tr. 2") at 174.)  Defense counsel ultimately won
acquittal for Petitioner on those charges.  Defense counsel also
gave a summation in which he attacked the credibility of the
prosecution's key witnesses.  (*Id.* at 185-205.)

As to the first prong of *Strickland*, Petitioner has
not proven that trial counsel's decision not to object to
portions of the prosecutor's summation was objectively
unreasonable.  Petitioner claims that trial counsel failed to
object when the prosecutor improperly referred to Behlin's grand
jury testimony.  A review of the record, however, indicates that
the prosecutor did not refer to Behlin's grand jury testimony in
front of the jury as part of his summation comments. (Tr. 1 at
289-296.)  Behlin was shown the transcript of her grand jury
testimony only to refresh her recollection without the jury
knowing what the questions and answers were.  (*Id.* at 296.)  As
to the prosecutor's insinuation during his summation that Behlin
may have been improperly influenced to give false testimony,
defense counsel did in fact raise an objection to the comments,

and the objection was sustained.  (Tr. 2 at 221, 228.)

Moreover, the prosecutor's statement during summation that a

person of Behlin's lifestyle would not make friends in the

street by pointing fingers in court did not suggest that

Petitioner had threatened Behlin.  These comments were merely

inferences that could reasonably be drawn from Behlin's

testimony that she had an extensive criminal record and would

not meet the approval of her social circle if she were known to

have testified against someone in court.  (*Id.* at 228.)  An

objection to these statements would not likely have been

sustained because the statements were based on Behlin's own

testimony.  Here, trial counsel could reasonably have decided

not to object to certain comments the prosecutor made on the

ground that it might annoy the jury.  The Supreme Court "has

never required defense counsel to pursue every claim or defense,

regardless of its merit, viability, or realistic chance for

success." *Knowles v. Mirzyance*, 556 U.S. 111, 123 (2009).

Furthermore, even if Petitioner were able to satisfy

*Strickland*'s first prong that his counsel's performance fell

below an objective standard of reasonableness, Petitioner does

not satisfy the second prong.  Petitioner has not shown that

there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 688, 694.  At trial,

there was overwhelming evidence of Petitioner's guilt. Wardell Jackson testified that he had known Petitioner for eleven or twelve years. (Tr. 1 at 96, 98.) Jackson told the jury that he and Petitioner knew each other because they both came together at Jackson's home on numerous occasions to smoke crack cocaine together. (*Id.* at 96-98.) Petitioner and Jackson were friendly and they usually saw each other two or three times a week. (*Id.* at 97, 163.)

According to Jackson's testimony, he and Petitioner had a falling out two weeks before the robbery and shooting, when Petitioner came to Jackson's apartment and bothered Jackson's wife. (*Id.* at 111-12, 163-65.) A fight ensued between Jackson and Petitioner and, as a result, Jackson knocked out Petitioner. *Id.* Afterward, Petitioner apologized, the two reconciled, and they continued to see each other, although Jackson maintained that he kept a certain distance from Petitioner. (*Id.* at 113, 164-66.)

Jackson testified that two weeks later, on January 25, 2009, Petitioner came to his house, without a mask on, and brandished a weapon and told Jackson and Behlin to surrender their valuables. (*Id.* at 119-20.) Petitioner told Jackson, that he "didn't forget what you did to me" and Petitioner shot him in the leg just as Jackson attempted to flee by jumping out of a window. (*Id.* at 123-24.) Behlin also testified that she

knew Petitioner from the neighborhood, that she was present with Jackson when Petitioner came to the apartment on January 25, 2009, she heard a gunshot after leaving the room to go to the bathroom and returned to find Jackson bleeding and her valuables missing.  (*Id.* at 250, 256-57.)  In the face of this overwhelming evidence of Petitioner's guilt, it is highly unlikely that the outcome of the trial would have been any different had trial counsel made the objections during the prosecutor's summation that Petitioner argues counsel should have made.

In light of Supreme Court precedent, and the strict standards of review under AEDPA, this Court finds the Appellate Division's rejection of Petitioner's ineffective assistance of counsel claim to be reasonable based on the evidence presented at trial, and that the court's decision was not contrary to or an unreasonable application of federal law.  The decision of the Appellate Division was in no way "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Richter*, 562 U.S. at 103.

Petitioner's ineffective assistance claim is therefore denied.

**CONCLUSION**

For the foregoing reasons, the Court denies
Petitioner's application for a writ of habeas corpus in its
entirety. Because Petitioner has not made a substantial showing
of the denial of any constitutional right, no certificate of
appealability will issue. *See* 28 U.S.C. § 2253; *see also*
*Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112-13 (2d
Cir. 2000). The Court certifies pursuant to 28 U.S.C. §
1915(a)(3) that any appeal from this order would not be taken in
good faith. *Coppedge v. United States*, 369 U.S. 438, 444-45
(1962). The Clerk of Court is directed to enter judgment, send
Petitioner a copy of this Memorandum and Order and the judgment,
note service on the docket, and close the case.

Dated: Brooklyn, New York
January 9, 2019                              SO ORDERED:

                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge